**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

ARKOSE LABS HOLDINGS, INC., a Delaware corporation;

ARKOSE LABS, INC., a Delaware corporation

Plaintiffs,

v.

DATADOME, a French company;

DATADOME SOLUTIONS, INC., a Delaware corporation,

Defendants.

Civil Action No.: 1:23-cv-01467-RGA

**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT AND UNFAIR COMPETITION**

## FIRST AMENDED COMPLAINT

Plaintiffs Arkose Labs Holdings, Inc. and Arkose Labs, Inc. (collectively "Arkose" or "Plaintiffs") file this First Amended Complaint for patent infringement and unfair competition against Defendants DataDome ("DataDome France") and DataDome Solutions, Inc. ("DataDome USA") (collectively, "DataDome" or "Defendants"), and allege as follows:

## NATURE OF ACTION

### (a) Patent Infringement

1. This is a civil action for patent infringement of Arkose's U.S. Patent Nos. 7,373,510 ("the '510 Patent"), 9,148,427 ("the '427 Patent"), 10,082,954 ("the '954 Patent"), 10,599,330 ("the '330 Patent"), 10,147,049 ("the '049 Patent"), and 11,227,232 ("the '232 Patent"), (collectively, the "Asserted Patents") under 35 U.S.C. § 1 et seq. Defendants have infringed and continues to infringe, and/or has induced and continues to induce infringement of, one or more claims of each of the Asserted Patents.

2. Arkose is a leader in cybersecurity and fraud prevention, particularly adept at detecting and mitigating internet bots, fraudsters, and other online threats. Since 2013, Arkose has serviced the world's leading organizations across a broad spectrum of major industries by providing technology, including CAPTCHA (an acronym for "Completely Automated Public Turing test to tell Computers and Humans Apart"), to prevent online threats such as account takeovers, credential stuffing, SMS ("short message service," or, texting) toll fraud, and new account fraud.

3. As one bot management solution Arkose provides, Arkose's CAPTCHA programs sift through all users of a computer platform to siphon out bots and other fraudulent threats. Arkose does this through a challenge system that, once integrated into a computer platform, verifies that a user of the computer platform is a human and not an automated response script, robot, or scam.

4. Arkose's threat detection and protection services encompass a number of additional features as well. Arkose Bot Manager analyzes device data and, with the help of self-learning models, can identify spoofing and evasion techniques. Processing of IP addresses comes standard with Arkose's IP intelligence system and is one factor that aids in calculating Arkose's propriety Risk Score by determining authenticity. Arkose's technology even monitors "behavioral biometrics," like mouse movements and keyboard activities, to ascertain whether a user exhibits human, or bot, tendencies.

5. Upon information and belief, DataDome's suite of online authentication, bot detection, API protection, fraud detection, and CAPTCHA products and services (collectively "DataDome Accused Products") infringe one or more claims of the Asserted Patents, including at least one claim of each Asserted Patent, as described below.

6. DataDome has received notice of the Asserted Patents. DataDome has been on notice of the ’954 and ’330 Patents since at least October 6, 2022; of the ’427 Patent since at least March 1, 2023; and of the ’510, ’049, and ’232 Patents since at least August 8, 2023.

7. Arkose Labs Holdings, Inc. is the legal owner by assignment of the Asserted Patents, which were duly and legally issued by the United States Patent and Trademark Office (“USPTO”). Arkose seeks to recover damages for DataDome’s wrongful conduct and to stop DataDome’s continuing willful infringement.

**(b) Unfair Competition and False Advertising**

8. In addition to patent infringement, DataDome advertises its products by smearing Arkose’s capabilities, falsely claiming Arkose products’ inferiority by publishing factually untrue details. DataDome’s “compare to Arkose Labs” advertising campaign (found at https://datadome.co/comparison/datadome-vs-arkose-labs/) falsely conveys the overall net impression that Arkose Labs cannot perform or provide the capabilities that are listed on DataDome’s webpage, and that the only way to obtain these capabilities is to use DataDome. This message is conveyed through statements such as “6+ reasons enterprises choose DataDome over Arkose Labs” followed by a colon that initiates a list of DataDome’s purported capabilities. Following this list, DataDome makes another set of claims introduced via the statement, “What makes DataDome stand out?” DataDome also repeatedly selected out-of-context portions of customer reviews that leave the false impression that the customers had made negative comments and comparisons to Arkose.

9. DataDome’s business practices are unlawful, unfair, and fraudulent under California’s Unfair Competition Law, Business & Professions Code §§ 17200, *et seq*. (the “UCL”); California’s False Advertising Law, Business & Professions Code §§ 17500, *et seq*. (the

"FAL"); Delaware's Deceptive Trade Practices Act, 6 Delaware Code §§ 2531, *et seq*. (the "DTPA"); Delaware's Consumer Fraud Statute, 6 Delaware Code §§ 2511, *et seq*. (the "CFS"); the Lanham Act (15 U.S.C. § 1125); and common law unfair competition law.

10. The result of DataDome's offending business practices is a sham comparison that misleads consumers into believing they are receiving a superior product or service and induces them to use DataDome's products based on nothing more than false, baseless information. California and federal regulations prohibit this misleading practice. On information and belief, these falsities and misrepresentations have caused and are causing customers to select DataDome over Arkose.

11. Arkose seeks to recover damages for DataDome's unlawful, unfair, and fraudulent business practices, and to enjoin, preliminarily and permanently, DataDome's continuing false advertising.

## PARTIES

12. Arkose Labs, Inc. and Arkose Labs Holdings, Inc. are each a corporation organized and existing under the laws of the State of Delaware with its principal place of business at Arkose Labs, c/o WeWork, 400 Concar Dr., San Mateo, CA 94402.

13. Upon information and belief, DataDome France is a foreign entity organized and existing under the laws of France and headquartered at 10 Rue de Penthievre, Paris, France 75008.

14. Upon information and belief, DataDome USA is a corporation organized under the laws of the State of Delaware and with a principal place of business at 524 Broadway, 11th Floor, New York, New York 10012. DataDome USA is a registered business entity in Delaware with the Delaware Secretary of State, and has an agent for service of process, CSC Headquarters, located at 251 Little Falls Drive, Wilmington, Delaware 19808.

## JURISDICTION AND VENUE

15. This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1, *et seq*., and unfair competition/false advertising arising under the laws of the United States, California, and Delaware.

16. This Court has subject matter jurisdiction over the matters asserted herein under 28 U.S.C. §§ 1331 and 1338(a) for patent infringement, and § 1331 for federal unfair competition and § 1367 for state-law unfair competition.

17. This Court has specific personal jurisdiction over DataDome France because, upon information and belief, DataDome France participates in and purposefully directs its subsidiary, DataDome USA, to infringe the Asserted Patents. Additionally, and/or in the alternative, upon information and belief, this Court has personal jurisdiction over DataDome France because of its agency relationship established between it and DataDome USA.

18. This Court has general personal jurisdiction over DataDome USA because, upon information and belief, this State serves as DataDome USA's State of incorporation.

19. Additionally, and/or in the alternative, this Court has personal jurisdiction over DataDome because, upon information and belief, DataDome has marketed and sold infringing products and services described herein to customers in this District.

20. Venue is proper in this judicial District pursuant to 28 U.S.C. §§ 1391 and 1400(b) at least because, on information and belief, DataDome USA is incorporated in this District and because DataDome USA has committed acts of infringement in this District.

21. Additionally, upon information and belief, venue is proper under to 28 U.S.C. § 1400(b) because DataDome France directs and controls DataDome USA in this District of incorporation and has caused DataDome USA to commit acts of infringement in this District.

Venue is also proper in this District for DataDome France under 28 U.S. C. §1391(c)(3) because defendants that are not United States residents may be sued in any judicial where personal jurisdiction is established.

## FACTS

### The Asserted Patents

**(a) United States Patent No. 7,373,510**

22. On May 13, 2008, United States Patent No. 7,373,510 ("the '510 Patent"), entitled "System and Method for Implementing a Robot Proof Web Site," was duly and legally issued by the United States Patent and Trademark Office from U.S. Patent Application Serial No. 09/901,442, filed on July 9, 2001, attached as **Exhibit A.** The '510 Patent has been granted 1172 days of patent term extension under 35 U.S.C. § 154(b). Arkose Labs Holdings, Inc. is the owner, by valid assignment, of the entire right, title, and interest in and to the '510 Patent, including the right to assert all causes of action arising under the patent and the right to any remedies for infringement of the patent.

**(b) United States Patent No. 9,148,427**

23. On September 29, 2015, United States Patent No. 9,148,427 ("the '427 Patent"), entitled "System and Method for Implementing a Robot Proof Web Site," was duly and legally issued by the United States Patent and Trademark Office from U.S. Patent Application Serial No. 12/113,607, filed on May 1, 2008, attached as **Exhibit B**. The '427 Patent has been granted 2019 days of patent term extension under 35 U.S.C. § 154(b). Arkose Labs Holdings, Inc. is the owner, by valid assignment, of the entire right, title, and interest in and to the '427 Patent, including the right to assert all causes of action arising under the patent and the right to any remedies for infringement of the patent.

**(c) United States Patent No. 10,082,954**

24. On September 25, 2018, United States Patent No. 10,082,954 ("the '954 Patent"), entitled "Challenge Generation for Verifying Users of Computing Devices," was duly and legally issued by the United States Patent and Trademark Office from U.S. Patent Application Serial No. 14/845,285, filed on September 4, 2015, attached as **Exhibit C**. The '954 Patent has been granted 204 days of patent term extension under 35 U.S.C. § 154(b). Arkose Labs Holdings, Inc. is the owner, by valid assignment, of the entire right, title, and interest in and to the '954 Patent, including the right to assert all causes of action arising under the patent and the right to any remedies for infringement of the patent.

**(d) United States Patent No. 10,147,049**

25. On December 4, 2018, United States Patent No. 10,147,049 ("the '049 Patent"), entitled "Automatic Generation of Training Data for Anomaly Detection Using Other User's Data Samples," was duly and legally issued by the United States Patent and Trademark Office from U.S. Patent Application Serial No. 14/840,270, filed on August 31, 2015, attached as **Exhibit D**. The '049 Patent has been granted 683 days of patent term extension under 35 U.S.C. § 154(b). Arkose Labs Holdings, Inc. is the owner, by valid assignment, of the entire right, title, and interest in and to the '049 Patent, including the right to assert all causes of action arising under the patent and the right to any remedies for infringement of the patent.

**(e) United States Patent No. 10,599,330**

26. On March 23, 2020, United States Patent No. 10,599,330 ("the '330 Patent"), entitled "Challenge Generation for Verifying Users of Computing Devices," was duly and legally issued by the United States Patent and Trademark Office from U.S. Patent Application Serial No. 16/139,042, filed on September 23, 2018, attached as **Exhibit E**. Arkose Labs Holdings, Inc. is the owner, by valid assignment, of the entire right, title, and interest in and to the '330 Patent, including the right to assert all causes of action arising under the patent and the right to any remedies for infringement of the patent.

**(f) United States Patent No. 11,227,232**

27. On January 18, 2022, United States Patent No. 11,227,232 ("the '232 Patent"), entitled "Automatic Generation of Training Data for Anomaly Detection Using Other User's Data Samples," was duly and legally issued by the United States Patent and Trademark Office from U.S. Patent Application Serial No. 16/150,922, filed on October 3, 2018, attached as **Exhibit F**. The '232 Patent has been granted 636 days of patent term extension under 35 U.S.C. § 154(b). Arkose Labs Holdings, Inc. is the owner, by valid assignment, of the entire right, title, and interest in and to the '232 Patent, including the right to assert all causes of action arising under the patent and the right to any remedies for infringement of the patent.

**DataDome's Infringing Conduct**

28. As asserted above, DataDome infringes Arkose's innovative technology and valuable intellectual property.

29. Arkose, a leader in cybersecurity and fraud prevention, discourages online threats by increasing the effort and cost for attackers to overcome system defenses. Arkose incorporates an AI-powered platform with real-time risk assessment and dynamic attack responses to stop

cybercrime at the entry point. Arkose owns patents covering Question Answering (QA) systems, user authorization methods, Local Outlier Factor (LOF) algorithm adaptations, and detection of anomalous or malicious user behavior in an enterprise network, including the Asserted Patents.

30. To reiterate, one of Arkose's bot prevention services is CAPTCHA technology. CAPTCHA may be used to authenticate and prevent automated software from performing actions that are undesired. How? By use of a challenge-response test, usually in audio or visual form, to ensure that the response to the challenge is generated by a person instead of by an automated device. The process comprises a computer asking a user to complete a simple test that the computer is able to recognize, such as asking how many stoplights appear in an array of pictures, or which letters or numbers, in a distorted image, appear on the screen. There are also other interesting variations, as shown in an example from Arkose below:




31. The test, designed to be easy for a computer to generate, proves difficult for a computer to solve. Therefore, a presumption of "human" is the conclusion if the computer receives a correct solution.

32. But Arkose's bot detection and prevention capabilities include other features as well. Arkose's technology analyzes device data and, with the help of self-learning models, can identify harmful spoofs and dynamic evasion techniques employed by bots. Arkose technology also employs device fingerprint randomization; allows for detection and separation of legitimate device signatures from outliers; and adapts to a customer's unique digital ecosystem and traffic. Arkose technology is not static; it learns and adapts to each customer's respective cybersecurity needs.

33. IP address processing comes standard with Arkose's IP intelligence system, combining IP intel derived from Arkose's network with third party IP "reputation" data (reputation data is an evaluation of the authenticity and reliability of a particular IP address based on its previous activities). Arkose's IP address analysis then provides its customers with an IP address's network, geolocation, and specific reputation information. Taken together with metadata, this analysis helps evaluate website traffic's origins and contributes to calculating Arkose's proprietary Risk Score.

34. Arkose's tech can also prevent account takeovers by utilizing "behavioral biometrics," which analyze patterns in user behavior—mouse movements, keystrokes, or touch gestures—and allows an organization to then determine whether those actions align with a human or an automated bot.

35. Arkose brings this action because DataDome chose to infringe Arkose's valuable intellectual property. The DataDome Accused Products offer customers protection from bot and online fraud attacks in a number of ways that mirror Arkose, such as CAPTCHA, monitoring IP addresses, analyzing behavioral biometrics, and use of AI. (https://datadome.co/bot-management-protection/gartner-report-online-fraud-prevention/#:~:text=Behavioral%20Biometrics,-

As%20per%20Gartner&text=DataDome's%20detection%20models%20leverage%20a,to%20bypass%20bot%20protection%20systems; https://datadome.co/bot-management-protection/how-to-use-machine-learning-to-detect-residential-proxies/).

36. DataDome has recently announced its use of an AI-powered platform that combines real-time analysis of threats with an array of prevention methods. (https://datadome.co/press/datadome-launches-device-check-invisible-captcha-alternative/?utm_campaign=evergreen&utm_source=linkedin&utm_medium=social&utm_content=device-check-pr). According to DataDome, Device Check is a challenge-response system that validates device-specific signals by analyzing whether a user has expended a certain amount of a specific computational effort, and without prompting any visible interaction.

37. DataDome has been aware of the ’330 and ’954 Patents since at least October 2022, of the ’427 Patent since at least March 2023, and the ’510, ’049 and ’232 Patents since at least August 2023, when Arkose notified DataDome of these patents. Furthermore, DataDome has been on notice of Arkose’s allegations of infringement of the Asserted Patents at least since it received this Complaint. Outside of Arkose’s patents, DataDome has been aware of Arkose’s technology and services for longer, as evidenced by its false and misleading statements about Arkose’s products on its website.

38. Since at least it received this Complaint, DataDome has been on notice of its infringement; its ongoing infringement is deliberate, willful, and knowing, with conscious disregard of Arkose’s rights, entitling Arkose to enhanced damages.

39. Datadome’s infringement is causing irreparable harm and monetary damages to Arkose, entitling Arkose to both monetary damages and injunctive relief.

## Unfair Business Practices

40. While infringing the Asserted Patents, DataDome simultaneously engages in unfair, unlawful, and misleading advertising that deprecates Arkose's products and services with little to no foundation, and sometimes with outright falsities. DataDome's webpage comparing the two companies' capabilities is attached as **Exhibit M**.

41. For example, DataDome's website includes claims like "Arkose's rules-based detection engine is like a legacy [web application firewall] but for bots, not powered by [machine learning] to stop advanced attacks." (https://datadome.co/comparison/datadome-vs-arkose-labs/). Additionally, DataDome compares the machine learning aspects of the two products, writing that Arkose has "no [machine learning]":




On the contrary, Arkose's products and services leverage "machine learning and human intelligence to detect and prevent fraudulent activities" across an array of sectors. (https://www.arkoselabs.com/blog/fraud-detection-in-banking-using-machine-learning/).

42. DataDome also falsely claims that Arkose only has "5 [points of presence] globally. This means request times take much longer and reliability is a concern . . . . Also, Arkose does not offer SLAs." (https://datadome.co/comparison/datadome-vs-arkose-labs/). In direct contradiction to these statements, Arkose's website shows *6* points of presence around the world, and provides a webpage exclusively dedicated to information about Arkose's "SLA Guarantee":







(https://www.arkoselabs.com/global-infrastructure/; https://www.arkoselabs.com/sla-guarantee/). Moreover, DataDome makes an unsubstantiated claim that Arkose's "request times take much longer and that reliability is a concern."

43. Another example of a misleading comparison falls under "Dashboard User Experience." DataDome claims that "Reviewers," plural, "say Arkose's dashboard is difficult to

navigate and not suited for transparent reporting and analytics." (https://datadome.co/comparison/datadome-vs-arkose-labs/). DataDome then cites to a single "G2 user," who purportedly stated that "[t]he dashboards and reporting offered by Arkose Labs still leave a lot to be desired. It is not very easy to gauge a simple funnel of clicked, passed, failed, and the categorization of each item based on IP country or type of threat." (highlighted in the image below; https://www.g2.com/products/arkose-labs/reviews/arkose-labs-review-4946277). DataDome does not include the rest of the review, which is a 5-star review in favor of Arkose, with the same reviewer praising Arkose for a user experience that is "simple and friendly . . . . I have not seen a better, 'fun' experience in any of the other CAPTCHA options.":



Validated Reviewer ✓ Review source: Organic

★★★★★ Sep 13, 2021 (Original Aug 17, 2021)

"Excellent, user friendly option for bot prevention"

**What do you like best about Arkose Labs?**

The best thing about Arkose is the simple and friendly user experience it presents to the genuine users who may get categorized as potential fraud. I have not seen a better, "fun" experience in any of the other CAPTCHA options.

**What do you dislike about Arkose Labs?**

The dashboards and reporting offered by Arkose Labs still leave a lot to be desired. It is not very easy to guage a simple funnel of clicked, passed, failed, and the categorization of each item based on IP country or type of threat. Whereas even a simple downloadable file would help demonstrate the impact of Arkose, what we have is a rather confusing graphic.

Show More

(https://www.g2.com/products/arkose-labs/reviews/arkose-labs-review-4946277). As apparent from the snapshot above, DataDome provides only half-truths to mislead potential customers into thinking that Arkose's products and services are not an adequate alternative to DataDome's.

44. Further false and misleading comparisons between DataDome and Arkose include references to implementation of the CAPTCHA technology into web infrastructure, real-time data, pricing, and more. (https://datadome.co/comparison/datadome-vs-arkose-labs/). Because DataDome has not and cannot offer any support for its statements and messaging, this advertising is false and misleading.

45. DataDome's advertising practices harm Arkose, and Arkose seeks monetary damages and injunctive relief.

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 7,373,510**

46. Arkose incorporates by reference and re-alleges all the foregoing paragraphs of the Complaint as if fully set forth herein.

47. DataDome and/or its customers directly infringe one or more claims of the '510 Patent under 35 U.S.C. § 271(a), including at least Claims 1 and 20, either literally or under the doctrine of equivalents by making, using, offering to sell, selling, and/or importing the DataDome Accused Products in the United States without permission or license from Arkose.

48. By way of example only and not limitation, Claim 1 of the '510 Patent claims:

> 1. A method for preventing robots from browsing a Web site beyond a welcome page, said method in the Web site comprising the steps of: receiving an initial request from an undefined originator and responding to said initial request with a challenge that prompts a response from said undefined originator; and
>
> receiving a response from said undefined originator and checking said response to determine whether said challenge is fulfilled; and
>
> if said challenge is fulfilled:
>
> processing any further requests; and
>
> if said challenge is not fulfilled:
> stopping processing of any further requests, wherein said step of stopping processing of said further requests includes the further step of:
>
> dropping or redirecting a TCP connection established with said undefined originator logging a source IP address of said undefined originator and starting a timer, further including steps upon receiving a new request of:
>
> checking whether a source IP address of said new request matches said logged source IP address; and

> if said source IP address matches said logged source IP address: checking whether said timer has expired and, if said timer is expired, resetting said logged IP address;
>
> and proceeding normally with said new request; and
>
> if said timer is not expired, dropping or redirecting said TCP connection;
>
> if said source IP address does not match said logged source IP address, proceeding normally with said new request and executing all the above steps with each newly received request.

49. The ’510 Patent addresses the problem of bots, or robots, or web crawlers attempting to access web sites. As one nonlimiting example, at the time of the invention, web crawlers or bots could be deterred by requiring an unknown user to register with a website, but requiring registration could deter users from proceeding on the website. *See, e.g.*, Ex. A at col. 1:16-2:20. As a result, the inventions claimed in the ’510 Patent provide a technological solution to the technical problem of preventing bots from accessing websites while at the same time not deterring legitimate human users from proceeding further on such websites. *Id.* at col. 2:24-32. Thus, the ’510 Patent provides an unconventional, technical solution to these problems in part by responding to an initial request from an undefined originator by providing a challenge to the undefined originator, and then taking further technical steps, including steps that vary depending on whether or not the challenge is satisfied. *See, e.g., id.* at col. 2:41-52, 3:16-45. The combination of elements described and claimed in the ’510 Patent was unknown in the prior art and provided significant advantages over existing systems.

50. The DataDome Accused Products meet each element in at least Claim 1 of the ’510 Patent, as illustrated in **Exhibit G**.

51. On information and belief, at least since it received this Complaint, DataDome also induces infringement of the ’510 Patent by its customers in the United States as discussed above

under 35 U.S.C. § 271(b), both by configuring the DataDome Accused Products to operate in a manner that DataDome knows would infringe the methods claimed in the ’510 Patent and by encouraging its customers to use the DataDome Accused Products in a manner that DataDome knows would infringe the methods claimed in the ’510 Patent

52. DataDome has also sold or offered to sell the DataDome Accused Products in an infringing configuration to its customers, which, on information and belief, have utilized the DataDome Accused Products in the United States.

53. Upon information and belief, DataDome has made and is continuing to make unlawful gains and profits from its infringement of the ’510 Patent.

54. At least since it received this Complaint, DataDome’s infringement of the ’510 Patent has been and continues to be willful and deliberate.

55. DataDome will continue to infringe unless enjoined by this Court. Arkose faces real, substantial and irreparable damage and injury of a continuing nature from infringement for which Arkose has no adequate remedy at law.

56. As a result of DataDome’s infringement, Arkose has been irreparably harmed, and will continue to be damaged, until DataDome is enjoined from further acts of infringement.

57. DataDome’s infringement has also caused monetary damages to Arkose in an amount to be determined at trial.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 9,148,427

58. Arkose incorporates by reference and re-alleges all the foregoing paragraphs of the Complaint as if fully set forth herein.

59. DataDome and/or its customers directly infringe one or more claims of the ’427 Patent under 35 U.S.C. § 271(a), including at least Claims 1 and 11, either literally or under the

doctrine of equivalents by making, using, offering to sell, selling, and/or importing the DataDome Accused Products in the United States without permission or license from Arkose.

60. By way of example only and not limitation, Claim 1 of the ’427 Patent claims:

> 1. A method for preventing robots from browsing a Web site beyond a welcome page, comprising:
>
> receiving an initial request, directed to the Web site, from an undefined originator;
>
> responding to the initial request with a challenge that prompts a response to the challenge from the undefined originator; and
>
> receiving the response to the challenge from the undefined originator, wherein
>
> the challenge includes:
>
> a plurality of graphical forms, and
>
> an accompanying textual expression describing one of the plurality of graphical forms, and
>
> the response to the challenge includes an identification of a location of the described one of the plurality of graphical forms.

61. The ’427 Patent addresses the problem of bots, or robots, or web crawlers attempting to access web sites. As one nonlimiting example, at the time of the invention, web crawlers or bots could be deterred by requiring an unknown user to register with a website, but requiring registration could deter users from proceeding on the website. *See, e.g.*, Ex. B at col. 1:23-2:25. As a result, the inventions claimed in the ’427 Patent provide a technological solution to the technical problem of preventing bots from accessing websites while at the same time not deterring legitimate human users from proceeding further on such websites. *Id.* at col. 2:29-37. Thus, the ’427 Patent provides an unconventional, technical solution to these problems in part by responding to an initial request from an undefined originator by providing a challenge in a

particular format to the undefined originator, and also taking further technical steps, including steps that vary depending on whether or not the challenge is satisfied. *See, e.g., id.* at col. 2:46-57, 3:23-53. The combination of elements described and claimed in the '427 Patent was unknown in the prior art and provided significant advantages over existing systems.

62. The DataDome Accused Products meet each element in at least Claim 1 of the '427 Patent, as illustrated in **Exhibit H**.

63. On information and belief, at least since it received this Complaint, DataDome also induces infringement of the '427 Patent by its customers in the United States as discussed above under 35 U.S.C. § 271(b), both by configuring the DataDome Accused Products to operate in a manner that DataDome knows would infringe the methods claimed in the '427 Patent and by encouraging its customers to use the DataDome Accused Products in a manner that DataDome knows would infringe the methods claimed in the '427 Patent

64. DataDome has also sold or offered to sell the DataDome Accused Products in an infringing configuration to its customers, which, on information and belief, have utilized the DataDome Accused Products in the United States.

65. Upon information and belief, DataDome has made and is continuing to make unlawful gains and profits from its infringement of the '427 Patent.

66. At least since it received this Complaint, DataDome's infringement of the '427 Patent has been and continues to be willful and deliberate.

67. DataDome will continue to infringe unless enjoined by this Court. Arkose faces real, substantial and irreparable damage and injury of a continuing nature from infringement for which Arkose has no adequate remedy at law.

68. As a result of DataDome's infringement, Arkose has been irreparably harmed, and will continue to be damaged, until DataDome is enjoined from further acts of infringement.

69. DataDome's infringement has also caused monetary damages to Arkose in an amount to be determined at trial.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 10,082,954

70. Arkose incorporates by reference and re-alleges all the foregoing paragraphs of the Complaint as if fully set forth herein.

71. DataDome and/or its customers directly infringe one or more claims of the '954 Patent under 35 U.S.C. § 271(a), including at least Claim 1, either literally or under the doctrine of equivalents by making, using, offering to sell, selling, and/or importing the DataDome Accused Products in the United States without permission or license from Arkose.

72. By way of example only and not limitation, Claim 1 of the '954 Patent claims:

> 1. A system for challenging a user of a computing device, the system comprising:
>
> a characteristics measurement module configured to measure one or more characteristics of a user action sensed by a computing device and performed by an authorized user of the computing device subsequent to the authorized user of the computing device having been identified as the authorized user of the computing device;
>
> a uniqueness assessor configured to
>
> determine that the measurements of the characteristics of the user action performed by the authorized user of the computing device subsequent to the authorized user of the computing device having been identified as the authorized user of the computing device meet a uniqueness condition with respect to measurements of corresponding characteristics of a corresponding action in a comparison set of actions, and

> cause the user action and the measurements of the characteristics to be recorded in a set of challenge actions associated with the authorized user responsive to determining that the measurements of the characteristics meet the uniqueness condition; and
>
> a challenge manager configured to determine, responsive to a challenge requirement, whether a current user of the computing device is the authorized user, by
>
> selecting one or more of the challenge actions associated with the authorized user,
>
> prompting the current user of the computing device to perform the selected challenge actions, wherein the selected challenge actions performed by the current user are sensed by the computing device, and
>
> determining that the measurements of the characteristics of the selected challenge actions performed by the current user meet a similarity condition with respect to measurements of corresponding characteristics of the selected challenge actions,
>
> wherein the characteristics measurement module, the uniqueness assessor, and the challenge manager are implemented in any of
>
> a) computer hardware, and
>
> b) computer software embodied in a non-transitory, computer-readable medium.

73. The ’954 Patent addresses the problem of generating challenges and measuring responses to verify a user of a computing device. As one nonlimiting example, at the time of the invention, the mere fact that appropriate credentials had been presented to log in to a computing device was not necessarily sufficient to verify a user because the login credentials might be stolen or the correct user may attempt to log in remotely. *See, e.g.*, Ex. C at col. 1:8-19. As a result, the inventions claimed in the ’954 Patent provide a technological solution to the technical problem of further verifying a user based on measurement of characteristics of the user action. *Id.* at col. 1:23-

30. Thus, the ’954 Patent provides an unconventional, technical solution to this problem in part by determining whether the characteristics of the user action meet a uniqueness condition, providing a challenge if required, and determining whether the actions performed in response to the challenge meet a similarity condition. *See, e.g., id.* at col. 1:23-50. The combination of elements described and claimed in the ’954 Patent was unknown in the prior art and provided significant advantages over existing systems.

74. The DataDome Accused Products meet each element in at least Claim 1 of the ’954 Patent, as illustrated in **Exhibit I**.

75. On information and belief, at least since it received this Complaint, DataDome also induces infringement of the ’954 Patent by its customers in the United States as discussed above under 35 U.S.C. § 271(b), both by configuring the DataDome Accused Products to operate in a manner that DataDome knows would infringe the methods claimed in the ’954 Patent and by encouraging its customers to use the DataDome Accused Products in a manner that DataDome knows would infringe the methods claimed in the ’954 Patent.

76. DataDome has also sold or offered to sell the DataDome Accused Products in an infringing configuration to its customers, which, on information and belief, have utilized the DataDome Accused Products in the United States.

77. Upon information and belief, DataDome has made and is continuing to make unlawful gains and profits from its infringement of the ’954 Patent.

78. At least since it received this Complaint, DataDome’s infringement of the ’954 Patent has been and continues to be willful and deliberate.

79. DataDome will continue to infringe unless enjoined by this Court. Arkose faces real, substantial and irreparable damage and injury of a continuing nature from infringement for which Arkose has no adequate remedy at law.

80. As a result of DataDome's infringement, Arkose has been irreparably harmed, and will continue to be damaged, until DataDome is enjoined from further acts of infringement.

81. DataDome's infringement has also caused monetary damages to Arkose in an amount to be determined at trial.

**COUNT IV:INFRINGEMENT OF U.S. PATENT NO. 10,147,049**

82. Arkose incorporates by reference and re-alleges all the foregoing paragraphs of the Complaint as if fully set forth herein.

83. DataDome and/or its customers directly infringe one or more claims of the '049 Patent under 35 U.S.C. § 271(a), including at least Claims 1 and 18, either literally or under the doctrine of equivalents by making, using, offering to sell, selling, and/or importing the DataDome Accused Products in the United States without permission or license from Arkose.

84. By way of example only and not limitation, Claim 1 of the '049 Patent claims:

1. A method, comprising:

   for a system or application used by a plurality of users, providing an access to a memory device storing user data samples for all users of the plurality of users;

   selecting a target user from among the plurality of users; and

   using a processor on a computer and using data samples for the target user and data samples for other users of the plurality of users, generating a normal sample data set and an abnormal (anomalous) sample data set to serve as a training data set for training a model for an anomaly detection monitor for the target user such that the data samples of the target user are used to derive a normal sample data set for the training set and the data

> samples of other users are used to derive an abnormal sample data set for the training set.

85. The ’049 Patent addresses the problem of generating training data sets to train machine learning models to detect anomalies in data associated with individual user access requests to computing resources. *See, e.g.,* Ex. D col. 1:7-38. As nonlimiting examples, at the time of the invention, some systems used synthetic data to generate training data sets or have used data sets only identifying “benign” data. *Id.* col. 1:19-2:40. To address these problems, the inventions claimed in the ’049 Patent incorporate data from individual users as training data, taking account the extent to which that data is or is not outlier data. *Id.* col. 2:48-63, 3:11-27. Thus, the ’049 Patent provides an unconventional, technical solution to this problem in part by incorporating normal and abnormal data samples as ML training data. *See, e.g., id.* col. 2:55-3:10. The combination of elements described and claimed in the ’049 Patent was unknown in the prior art and provided significant advantages over existing systems.

86. The DataDome Accused Products meet each element in at least Claim 1 of the ’049 Patent, as illustrated in **Exhibit J**.

87. On information and belief, at least since it received this Complaint, DataDome also induces infringement of the ’049 Patent by its customers in the United States as discussed above under 35 U.S.C. § 271(b), both by configuring the DataDome Accused Products to operate in a manner that DataDome knows would infringe the methods claimed in the ’049 Patent and by encouraging its customers to use the DataDome Accused Products in a manner that DataDome knows would infringe the methods claimed in the ’049 Patent.

88. DataDome has also sold or offered to sell the DataDome Accused Products in an infringing configuration to its customers, which, on information and belief, have utilized the DataDome Accused Products in the United States.

89. Upon information and belief, DataDome has made and is continuing to make unlawful gains and profits from its infringement of the ’049 Patent.

90. At least since it received this Complaint, DataDome’s infringement of the ’049 Patent has been and continues to be willful and deliberate.

91. DataDome will continue to infringe unless enjoined by this Court. Arkose faces real, substantial and irreparable damage and injury of a continuing nature from infringement for which Arkose has no adequate remedy at law.

92. As a result of DataDome’s infringement, Arkose has been irreparably harmed, and will continue to be damaged, until DataDome is enjoined from further acts of infringement.

93. DataDome’s infringement has also caused monetary damages to Arkose in an amount to be determined at trial.

## COUNT V: INFRINGEMENT OF U.S. PATENT NO. 10,599,330

94. Arkose incorporates by reference and re-alleges all the foregoing paragraphs of the Complaint as if fully set forth herein.

95. DataDome and/or its customers directly infringe one or more claims of the ’330 Patent under 35 U.S.C. § 271(a), including at least Claim 1, either literally or under the doctrine of equivalents by making, using, offering to sell, selling, and/or importing the DataDome Accused Products in the United States without permission or license from Arkose.

96. By way of example only and not limitation, Claim 1 of the ’330 Patent claims:

> 1. A method for challenging a user of a computing device, the method comprising:
>
> receiving an initial request from an undefined originator and responding to said initial request with a challenge that prompts a response from said undefined originator; and

measuring one or more characteristics of a user action sensed by a computing device and performed by an authorized user of the computing device subsequent to the authorized user of the computing device having been identified as the authorized user of the computing device;

determining that the measurements of the characteristics of the user action performed by the authorized user of the computing device subsequent to the authorized user of the computing device having been identified as the authorized user of the computing device meet a uniqueness condition with respect to measurements of corresponding characteristics of a corresponding action in a comparison set of actions;

recording the user action and the measurements of the characteristics in a set of challenge actions associated with an authorized user;

performing the measuring, determining, and recording for a plurality of different user actions associated with the authorized user responsive to determining that the measurements of the characteristics meet the uniqueness condition; and

responsive to a challenge requirement to determine whether a current user of the computing device is the authorized user,

selecting one or more of the challenge actions associated with the authorized user,

prompting the current user of the computing device to perform the selected challenge actions, wherein the prompted actions performed by the current user are sensed by the computing device,

measuring one or more characteristics of the prompted actions performed by the current user, and

determining that the measurements of the characteristics of the prompted actions performed by the current user meet a similarity condition with respect to measurements of corresponding characteristics of the selected challenge actions,

wherein the measuring, determining, recording, performing, selecting, and prompting are implemented in any of

(a) computer hardware, and

> (b) computer software embodied in a non-transitory, computer-readable medium.

97. The ’330 Patent addresses the problem of generating challenges and measuring responses to verify a user of a computing device. As one nonlimiting example, at the time of the invention, the mere fact that appropriate credentials had been presented to log in to a computing device was not necessarily sufficient to verify a user because the login credentials might be stolen or the correct user may attempt to log in remotely. *See, e.g.*, Ex. E at col. 1:8-19. As a result, the inventions claimed in the ’330 Patent provide a technological solution to the technical problem of further verifying a user based on measurement of characteristics of the user action. *Id.* at col. 1:23-30. Thus, the ’330 Patent provides an unconventional, technical solution to this problem in part by determining whether the characteristics of the user action meet a uniqueness condition, providing a challenge if required, and determining whether the actions performed in response to the challenge meet a similarity condition. *See, e.g., id.* at col. 1:23-50. The combination of elements described and claimed in the ’330 Patent was unknown in the prior art and provided significant advantages over existing systems.

98. The DataDome Accused Products meet each element in at least Claim 1 of the ’330 Patent, as illustrated in **Exhibit K**.

99. On information and belief, at least since it received this Complaint, DataDome also induces infringement of the ’330 Patent by its customers in the United States as discussed above under 35 U.S.C. § 271(b), both by configuring the DataDome Accused Products to operate in a manner that DataDome knows would infringe the methods claimed in the ’330 Patent and by encouraging its customers to use the DataDome Accused Products in a manner that DataDome knows would infringe the methods claimed in the ’330 Patent.

100. DataDome has also sold or offered to sell the DataDome Accused Products in an infringing configuration to its customers, which, on information and belief, have utilized the DataDome Accused Products in the United States.

101. Upon information and belief, DataDome has made and is continuing to make unlawful gains and profits from its infringement of the ’330 Patent.

102. At least since it received this Complaint, DataDome’s infringement of the ’330 Patent has been and continues to be willful and deliberate.

103. DataDome will continue to infringe unless enjoined by this Court. Arkose faces real, substantial and irreparable damage and injury of a continuing nature from infringement for which Arkose has no adequate remedy at law.

104. As a result of DataDome’s infringement, Arkose has been irreparably harmed, and will continue to be damaged, until DataDome is enjoined from further acts of infringement.

105. DataDome’s infringement has also caused monetary damages to Arkose in an amount to be determined at trial.

## COUNT VI:INFRINGEMENT OF U.S. PATENT NO. 11,227,232

106. Arkose incorporates by reference and re-alleges all the foregoing paragraphs of the Complaint as if fully set forth herein.

107. DataDome and/or its customers directly infringe one or more claims of the ’232 Patent under 35 U.S.C. § 271(a), including at least Claims 1 and 17, either literally or under the doctrine of equivalents by making, using, offering to sell, selling, and/or importing the DataDome Accused Products in the United States without permission or license from Arkose.

108. By way of example only and not limitation, Claim 1 of the ’232 Patent claims:

1. A method, comprising:

> for a system or an application used by a plurality of users, providing an access to a memory device storing user data samples of a usage of the system or the application for all users of the plurality of users;
>
> selecting a target user from among the plurality of users, using a processor on a computer, the data samples of the target user forming a cluster of data points in a data space;
>
> using the processor to take data samples for the target user to generate a normal sample data set as training data set for training a model for an anomaly detection monitor for the target user; and
>
> using a local outlier factor (LOF) function to generate an abnormal sample data set for training the anomaly detection monitor for the target user.

109. The ’232 Patent addresses the problem of generating training data sets to train machine learning models to detect anomalies in data associated with individual user access requests to computing resources. *See, e.g.,* Ex. F col. 1:11-42. As nonlimiting examples, at the time of the invention, some systems used synthetic data to generate training data sets or have used data sets only identifying "benign" data. *Id.* col. 1:23-2:44. To address these problems, the inventions claimed in the ’232 Patent incorporate data from individual users as training data, taking account the extent to which that data is or is not outlier data. *Id.* col. 2:52-67, 3:16-31. Thus, the ’232 Patent provides an unconventional, technical solution to this problem in part by incorporating normal and abnormal data samples as ML training data. *See, e.g., id.* col. 2:59-3:15. The combination of elements described and claimed in the ’232 Patent was unknown in the prior art and provided significant advantages over existing systems.

110. The DataDome Accused Products meet each element in at least Claim 1 of the ’232 Patent, as illustrated in **Exhibit L**.

111. On information and belief, at least since it received this Complaint, DataDome also induces infringement of the ’232 Patent by its customers in the United States as discussed above under 35 U.S.C. § 271(b), both by configuring the DataDome Accused Products to operate in a manner that DataDome knows would infringe the methods claimed in the ’232 Patent and by encouraging its customers to use the DataDome Accused Products in a manner that DataDome knows would infringe the methods claimed in the ’232 Patent.

112. DataDome has also sold or offered to sell the DataDome Accused Products in an infringing configuration to its customers, which, on information and belief, have utilized the DataDome Accused Products in the United States.

113. Upon information and belief, DataDome has made and is continuing to make unlawful gains and profits from its infringement of the ’232 Patent.

114. At least since it received this Complaint, DataDome’s infringement of the ’232 Patent has been and continues to be willful and deliberate.

115. DataDome will continue to infringe unless enjoined by this Court. Arkose faces real, substantial and irreparable damage and injury of a continuing nature from infringement for which Arkose has no adequate remedy at law.

116. As a result of DataDome’s infringement, Arkose has been irreparably harmed, and will continue to be damaged, until DataDome is enjoined from further acts of infringement.

117. DataDome’s infringement has also caused monetary damages to Arkose in an amount to be determined at trial.

**COUNT VII: VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL") CALIFORNIA & BUSINESS PROFESSIONS CODE §§ 17200, *et seq.***

118. Arkose incorporates by reference and re-alleges all the foregoing paragraphs of the Complaint as if fully set forth herein.

119. The UCL defines "unfair business competition" to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. Prof. Code § 17200.

120. The UCL imposes strict liability. Arkose need not prove that DataDome intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices – but only that such practices occurred.

**(a) "Unfair" Prong**

121. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practice against the gravity of the harm to the alleged victims.

122. DataDome's actions constitute "unfair" business practices because, as alleged above, DataDome engaged in misleading and deceptive product comparison advertising that represented false comparisons without any corresponding information to back up those contentions. Datadome's acts and practices engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

123. The harm to Arkose outweighs the utility of DataDome's practices. There were reasonably available alternatives to further DataDome's legitimate business interests other than the misleading and deceptive conduct described herein.

**(b) “Fraudulent” Prong**

124. A business act or practice is “fraudulent” under the UCL if it is likely to deceive members of the consuming public.

125. DataDome’s acts and practices alleged above constitute fraudulent business acts or practices as they have deceived customers and are highly likely to deceive more members of the consuming public or targeted consumers. Consumers rely on DataDome’s fraudulent and deceptive representations regarding its products and services. These misrepresentations play a substantial role in a consumer’s decision to purchase those products or services and some customers would not have purchased those products and services without DataDome’s misrepresentations.

**(c) “Unlawful” Prong**

126. A business act or practice is “unlawful” under the UCL if it violates any other law or regulation.

127. DataDome’s acts and practices alleged above constitute unlawful business acts or practices as they have violated state and federal law in connection with their deceptive advertising scheme. As explained more thoroughly below, DataDome’s advertising practices violate both California and Delaware law.

128. The violation of any law constitutes an “unlawful” business practice under the UCL.

129. As detailed herein, the acts and practices alleged were intended to or did result in violations of the FAL, the DTPA, and CFS.

**(d) All Three Prongs Are Met**

130. DataDome's practices, as set forth above, have misled consumers of DataDome and Arkose's products and services in the past and will continue to mislead in the future. Consequently, DataDome's practices constitute an unlawful, fraudulent, and/or unfair business practice within the meaning of the UCL.

131. DataDome's violation of the UCL, through its unlawful, unfair, and/or fraudulent business practices, is ongoing and presents a continuing threat to consumers, and the public will be deceived into purchasing products based on deceptive comparisons. These false comparisons create phantom competition and lead to unfair business competition unsupported by facts or actual research.

132. Arkose seeks to recover reasonable attorneys' fees pursuant to California Code of Civil Procedure § 1021.5, as this lawsuit seeks the enforcement of an important right affecting the public interest and satisfies the statutory requirements for an award of attorneys' fees.

133. Pursuant to the UCL, Plaintiff is also entitled to preliminary and permanent injunctive relief and order DataDome to cease this unfair competition, as well as disgorgement and restitution to Arkose of all DataDome's revenues associated with its unfair competition, or such portion of those revenues as the Court may find equitable.

**COUNT VIII: VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW ("FAL") CALIFORNIA & BUSINESS PROFESSIONS CODE §§ 17500, *et seq.***

134. Arkose incorporates by reference and re-alleges all the foregoing paragraphs of the Complaint as if fully set forth herein.

135. California Business and Professions Code § 17500 provides:

> It is **unlawful** for any person, firm, **corporation or association**, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services, professional or

> otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, **to make or disseminate or cause to be made or disseminated** before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, **any statement**, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, **which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading**, or for any person, firm, or corporation to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised. **Any violation** of the provisions of this section is a misdemeanor punishable by imprisonment in the county jail not exceeding six months, or by a fine not exceeding two thousand five hundred dollars ($2,500), or by both that imprisonment and fine.

(emphasis added).

136. DataDome's regular practice of advertising Arkose's products and services as inferior is an unfair, untrue, and misleading practice. This deceptive marketing gives consumers the false impression that Arkose's products and services do not perform at an adequate level and that DataDome's products and services are vastly superior in every way, leading to the false conclusion that DataDome must be a provider of superior cybersecurity services.

137. DataDome misled consumers by making untrue and misleading statements that, if it had exercised any "reasonable care," would or should have known were false, untrue, and misleading.

138. As a direct and proximate result of DataDome's misleading and false advertisements, Arkose has suffered injury in fact and has lost money. As such, Arkose requests that this Court order DataDome to restore this money Arkose, and to enjoin DataDome from

continuing these unfair practices in violation of the UCL in the future. Otherwise, Arkose and the broader general public, will be irreparably harmed and/or denied an effective and complete remedy.

**COUNT IX: VIOLATION OF DELAWARE'S DECEPTIVE TRADE PRACTICES ACT ("DTPA") 6 DELAWARE CODE §§ 2531, *et seq.***

139. Arkose incorporates by reference and re-alleges all the foregoing paragraphs of the Complaint as if fully set forth herein.

140. DataDome's false and misleading advertising constitutes a deceptive trade practice injurious to the business interests of Arkose and in violation of the DTPA. In particular, DataDome's deceptive advertising expressly and/or implicitly "[d]isparages the goods, services, or business of another by false or misleading representation[s] of fact." 6 Del. C. § 2532(a)(8).

141. As outlined above, and further outlined below, DataDome's false and misleading advertisements create a false narrative surrounding Arkose's products and services. DataDome's deceptive trade practices have therefore deceived, or have a tendency to deceive, members of the public.

142. Arkose has been damaged by DataDome's deceptive trade practices and is likely to be damaged further by those practices if they continue.

143. The deceptive trade practices described above and below are causing Arkose to suffer injury for which there is no adequate remedy at law. DataDome's conduct will therefore cause Arkose to suffer irreparable harm unless DataDome is preliminarily and permanently restrained and enjoined by this Court.

**COUNT X: VIOLATION OF DELAWARE'S CONSUMER FRAUD STATUTE ("CFS") 6 DELAWARE CODE §§ 2511, *et seq.***

144. Arkose incorporates by reference and re-alleges all the foregoing paragraphs of the Complaint as if fully set forth herein.

145. The CFA states:

> The act, use, or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale, lease, receipt, or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is an unlawful practice.

6 Del. C. § 2513(a). DataDome's misrepresentation of Arkose's products and services, and concealment or omission of material facts in its advertising constitutes a violation of the CFS.

146. DataDome knew, or through the exercise of reasonable diligence should have known, that by advertising Arkose's products and services in an unfair and false manner, it would create the false and deceptive impression that Arkose's products and services were allegedly inferior to DataDome's.

147. Arkose has been damaged by DataDome's false and deceptive advertising practices and is likely to be further damaged by DataDome's false and deceptive advertising tactics if they continue.

148. DataDome's continued violations of the CFS are causing Arkose to suffer injury for which there is no adequate remedy at law. DataDome's conduct will therefore cause the Arkose irreparable harm unless DataDome is preliminarily and permanently restrained and enjoined by this Court.

## COUNT XI: VIOLATION OF THE LANHAM ACT 15 U.S.C. § 1125

149. Arkose incorporates by reference and re-alleges all the foregoing paragraphs of the Complaint as if fully set forth herein.

150. The Lanham Act provides:

> Any person who, on or in connection with goods or services . . . uses in commerce any . . . false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125 (a)(1)(B).

151. DataDome has violated the Lanham Act by using false and misleading advertisements and marketing claims, or impliedly false advertising and marketing claims, that misrepresent the nature, characteristics, and/or qualities of Arkose's products and services sold in competition with DataDome's.

152. DataDome's regular practice of advertising Arkose's products and services as inferior is a false or misleading misrepresentation of fact as to the qualities and characteristics of Arkose's services and products. DataDome's misleading marketing gives consumers the false impression that Arkose's products and services do not match the qualities and characteristics of DataDome's products and services, and because of this misrepresentation, DataDome leads consumers to believe, falsely, that Arkose's products and services are inferior.

153. Among other false and misleading statements, DataDome has claimed that:

(i) Arkose's products and services are "not powered by [machine learning] to stop" bot attacks. This statement is literally false or impliedly false because Arkose's own website explains that its products and services leverage

"machine learning and human intelligence to detect and prevent fraudulent activities" across an array of sectors.

(ii) Arkose only has "5 [points of presence] globally. This means request times take much longer and reliability is a concern . . . . Also, Arkose does not offer SLAs." These statements are literally false or impliedly false because Arkose's website shows *6* points of presence around the world, and Arkose does in fact offer SLAs, providing a webpage explaining its "SLA Guarantee."

(iii) Arkose has "no integration with popular serves like F5, NGINX, Apache, Cloudflare, and AWS CloudFront." This statement is literally false or impliedly false because Arkose has several integrations, including with the services mentioned, like CloudFlare and AWS CloudFront.

(iv) Arkose "requires onsite resources from customers to manage and operate rule implementation, authoring, auditing, and performance optimization . . . . [and] requires internal teams to perform remediation tasks on a recurring basis." These statements are literally false or impliedly false because they are not true for "managed" customers, a large majority of Arkose's customer base.

154. As a direct and proximate result of DataDome's misleading advertisements, Arkose has suffered injury in fact and has lost money. As such, Arkose requests that this Court order DataDome to restore this money Arkose, and to enjoin DataDome from continuing to make these misrepresentations in violation of the Lanham Act in the future. Otherwise, Arkose and the broader general public, will be irreparably harmed and/or denied an effective and complete remedy.

155. DataDome, if not enjoined by this Court, is likely to deceive potential and current customers of both Arkose and DataDome in addition to members of the general public.

156. DataDome's above-described acts have irreparably harmed Arkose and, if not enjoined, will continue to irreparably harm Arkose.

157. The above-described acts of DataDome have irreparably harmed the public interest, and, if not enjoined, will continue to irreparably harm the interest of the public in being free from confusion, mistake, and deception.

158. As a direct and proximate result of DataDome's knowing and willful false and misleading statements, false advertising, and wrongful acts of unfair competition, Arkose has suffered and will continue to suffer injury in fact and actual damages, including lost business, market share, sales, revenue, and profits.

159. However, Arkose's remedies at law are not adequate to compensate for all the injuries inflicted by DataDome. Accordingly, Arkose is entitled to entry of preliminary and permanent injunctive relief requiring DataDome to cease their false and misleading advertising, promotion, and unfair competitive practices.

160. If not restrained, DataDome will have unfairly derived, and will continue to unfairly derive, income, profits, and business opportunities as a result of their acts of false and misleading advertising and unfair competition.

161. Based on the foregoing, Arkose is entitled to injunctive relief as well as actual damages, treble damages, disgorgement of DataDome's profits, the costs of this action, and attorneys' fees pursuant to 15 U.S.C. § 1117, as well as other remedies set forth in the Prayer for Relief.

**COUNT XII:COMMON LAW UNFAIR COMPETITION**

162. Arkose incorporates by reference and re-alleges all the foregoing paragraphs of the Complaint as if fully set forth herein.

163. DataDome's false, misleading, and unfair business practices have, and are likely to, mislead, deceive, or confuse the minds of consumers, potential customers, and the general public with respect to the nature, quality, and characteristics of Arkose's products and services. Arkose's reputation, credit, and other business interests are likely to be damaged by DataDome's unfair business practices if they continue.

164. DataDome's conduct constitutes unfair competition and is causing Arkose to suffer injury for which there is no adequate remedy at law. DataDome's conduct will therefore cause Arkose to suffer irreparable harm unless DataDome is preliminarily and permanently restrained by this Court.

**ATTORNEYS' FEES**

According to 35 U.S.C. § 285, California Code of Civil Procedure § 1021.5, and 6 Delaware Code § 2533, Arkose is entitled to, and respectfully requests, its reasonable attorneys' fees in this case.

**PRAYER FOR RELIEF**

WHEREFORE, Arkose respectfully requests:

A. That this Court declare DataDome has directly infringed, and/or infringed by doctrine of equivalents, and continues to directly infringe and/or infringe by doctrine of equivalents one or more claims of the Asserted Patents under 35 U.S.C. § 271(a);

B. That this Court declare DataDome has indirectly infringed, and continues to indirectly infringe, one or more claims of the Asserted Patents under 35 U.S.C. § 271(b);

C. That this Court order an accounting for all monies received by or on behalf of the DataDome and all damages sustained by Arkose because of DataDome's above-mentioned infringements; that such monies and damages be awarded to Arkose; and that interest and costs be assessed against DataDome according to 35 U.S.C. §§ 154(d) and 284;

D. That this Court declare DataDome's infringement was and is willful from the time they became aware of the infringing nature of their product, and award treble damages for the period of the willful infringement of the Asserted Patents;

E. That this Court declare this an exceptional case and order that DataDome pay Arkose its reasonable attorneys' fees and costs according to 35 U.S.C. § 285;

F. That DataDome, its officers, directors, agents, servants, employees, attorneys, affiliates, divisions, branches, parents, and those persons in active concert or participation with any of them, be preliminarily and/or permanently restrained and enjoined from directly or indirectly infringing the Asserted Patents;

G. An award of damages pursuant to 35 U.S.C. § 284 sufficient to compensate Arkose for DataDome's past infringement and any continuing or future infringement up until the date that DataDome is finally and permanently enjoined from further infringement, including compensatory damages;

H. An assessment of pre-judgment and post-judgment interest and costs against DataDome, together with an award of such interest and costs, in accordance with 35 U.S.C. § 284;

I. An award of damages as a result of DataDome's unlawful, unfair, and fraudulent business practices;

J. An award of restitution, and disgorgement of all profits and unjust enrichment that DataDome obtained as a result of its unlawful, unfair, and fraudulent business practices;

K. An award of declaratory and injunctive relief as permitted by law or equity, including: enjoining DataDome from continuing the unlawful practices as set forth herein, and directing DataDome to pay Arkose all money it is required to pay;

L. An award of attorneys' fees and costs under California Code of Civil Procedure § 1021.5 and 6 Delaware Code § 2533; and

M. That Arkose have such other and further relief as this Court may deem just and proper.

Date: March 14, 2024

By: */s/ Daniel M Attaway*
Daniel M. Attaway

Daniel M. Attaway (#5130)
**WOMBLE BOND DICKINSON (US) LLP**
1313 North Market Street, Suite 1200

Wilmington, DE 19801
Tel.: 302-252-4320
Daniel.Attaway@wbd-us.com

Attorneys for Plaintiffs Arkose Labs Holdings Inc.
and Arkose Labs, Inc.

Of Counsel:

Christian E. Mammen (*pro hac vice* forthcoming)
Chris.Mammen@wbd-us.com
Daniel Grigore (*pro hac vice* forthcoming)
Daniel.Grigore@wbd-us.com
Blake L. Holt (*pro hac vice* forthcoming)
Blake.Holt@wbd-us.com
**WOMBLE BOND DICKINSON (US) LLP**
50 California Street, Suite 2750
San Francisco, CA 94111
Tel.: 415-433-1900
Attorneys for Plaintiffs Arkose Labs Holdings Inc.
and Arkose Labs, Inc.